SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**JOSEPH H. HUYNH, DC #495403**
Assistant United States Attorney
Joseph.Huynh@usdoj.gov
405 E 8th Avenue, Suite 2400
Eugene, OR 97401
Telephone: (541) 465-6771
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **6:25-cr-00512-001-MC** |
| **v.** | **UNITED STATES'** |
| | **SENTENCING MEMORANDUM** |
| **ROSA GLORIA ORTIZ-MEJIA,** | |
| **Defendant.** | |

Defendant Rosa Gloria Ortiz-Mejia was found in possession of approximately 78 pounds of methamphetamine in plastic baggies located in the trunk of her car.  Investigators determined Ortiz-Mejia was working for a drug trafficking organization (DTO) with contacts in Mexico. For her actions, she must be held accountable.  As a result, the Government recommends a low-end guideline sentence and three years of supervised release.

## I.    The Offense Conduct

In 2023, the Madras Police Department launched an investigation of a DTO after a traffic stop of Ricardo Jose Suarez in 2022 resulted in a seizure of methamphetamine, fentanyl, and U.S. currency.  At the time, Suarez admitted to delivering methamphetamine throughout

**United States' Sentencing Memorandum**                                                    **Page 1**

Jefferson County, Oregon.  He stated that he was not a dealer but worked as a high-level coordinator with ties to drug traffickers in Mexico and Portland.

In 2025, a confidential informant (CI) identified Suarez as a Mexico-based source of supply.  In August of 2025, Suarez informed the CI that a female (the Defendant) was traveling from California to deliver methamphetamine in Springfield, Oregon.  On August 27, 2025, Suarez contacted the CI stating that the delivery would arrive later that day and provided a phone number to contact the Defendant.  The CI and the Defendant established a meeting time and location, which the CI provided to DEA.  Investigators observed the Defendant arrive at the designated meeting location in a white Toyota Camry.  Anthony Koloski (unknown to investigators at the time) was also observed walking in the area and eventually entered the passenger side of the Defendant's vehicle.  After the CI provided the Defendant with a new location for the meet-up, the two exited the parking lot.

On the way to the second location, investigators observed the Camry rolling through a stop sign and an SPD officer conducted a traffic stop.  The officer deployed a drug-detecting canine, which alerted to the presence of drugs inside the vehicle.  The officer then began a search; the back seat of the Camry revealed a large open cardboard box that contained thirteen zip-lock bags containing an off-white crystal substance.  Each bag was labeled with "2p," designating two pounds per bag.  In the trunk, there was a second cardboard box that contained twenty-five zip-lock bags identical to those in the backseat.  Also found in the second box, were paper cups containing suspected fentanyl (the amount not specified).  The substance within the bags was field-tested and produced a positive test for methamphetamine.  The combined weight of the substance in the bags was approximately seventy-eight pounds.

/ / /

**United States' Sentencing Memorandum**                                                        **Page 2**

## II.    The Plea Agreement & Guideline Computations

On March 31, 2026, the Defendant pled guilty to a single-count Information, which charged her with possession with the intent to distribute 500 grams or more of a mixture or substance containing methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and 846.  Consistent with both the guidelines and the plea agreement, the Government recommends the following guidelines calculation:

| Enhancement | Government's Position |
|---|---|
| Base Offense Level USSG §2D1.1(a)(5)(B)(ii) | 32[1] |
| Safety Valve USSG §2D1.1(b)(18) | -2 |
| Minor role USSG § 3B1.2(b) | -2 |
| Acceptance of Responsibility USSG § 3E1.1(a) | -2 |
| Acceptance of Responsibility USSG § 3E1.1(b) | -1 |
| Zero-point offender USSG § 4C1.1 | -2 |
| **Adjusted Offense Level** | 23 |
| Early Resolution Variance 18 U.S.C. § 3553(a) | -3 |
| **Total Offense Level** | 20 |
| **Resulting Guideline Range** | 33 to 41 months  (CAT I) |

/ / /

/ / /

---

[1] The calculation provided in the plea regarding the adjusted initial base level of 33 is in err; the offense as charged makes the initial base offense level 36. Pursuant to USSG §2D1.1(a)(5)(B)(ii), if a defendant is to receive a role reduction under 3B1.2(b) am the base offense level was greater than 34 (which it is in this case based on the amount and type of drug involved), then the resulting base offense level is 32.  Therefore, the correct base level is 32 as noted in the PSR.

**United States' Sentencing Memorandum**                                    **Page 3**

Pursuant to the plea agreement, the Government agreed to recommend the low-end of the applicable guideline range and the Defendant agreed not to seek downward departures or adjustments but may seek a variance from the guideline range.

### III.    Government's Recommended Sentence

Applying the 3553(a) factors to this case and maintaining consistency with the plea agreement, the Government is recommending the Court to sentence at the low-end of the applicable guideline range.

#### A.  The Nature and Circumstances of the Offense

The Defendant preyed upon the addiction of others to benefit herself.  She possessed and distributed methamphetamine, feeding the addiction of others for profit.  The recommended sentence is sufficient to hold the Defendant responsible for her actions but is not greater than necessary.

#### B.  Defendant's History and Characteristics

The total criminal history score is zero.  However, the Defendant was arrested on November 21, 2022, in Yakima, Washington, for Assault III and Obstructing Law Enforcement (both misdemeanors).  In this incident, Yakima police officers were investigating a possible Driving Under the Influence Offense and the Defendant who was an intoxicated passenger of the inciting vehicle, refused to leave the area and assaulted an officer in an unknown manner.  The Defendant was subsequently arrested and booked into Yakima County Jail.  No formal charges were filed in that case.

/ / /

/ / /

/ / /

**United States' Sentencing Memorandum**                                                          **Page 4**

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

Trafficking in drugs destroys not only the lives of its victims, but also the families and communities impacted by it.  The Defendant's actions of profiting through drug trafficking have fed drug addiction and helped the epidemic destroying families and lives.

### D.  The Need for the Sentence to Afford Adequate Deterrence

This Court's enforcing of the recommended low-end guideline range would allow Defendant to take full accountability and responsibility for her drug trafficking and hopefully deter her from continuing to do so in the future.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

The Defendant is facing her first criminal conviction.  Given the period of supervised release to follow, the sentence appears warranted and consistent with others sentenced for similar crimes as the average length of imprisonment imposed is 31 months and the median length of imprisonment is 35 months.

## IV.    Conclusion

Accordingly, for the reasons set forth above, the Government respectfully recommends a sentence at the low-end of the guidelines followed by three years of supervised release.

Dated: June 24, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Joseph H. Huynh*
JOSEPH H. HUYNH
Assistant United States Attorney

**United States' Sentencing Memorandum**                                               **Page 5**